**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BENITO SANTIAGO,**

        **Plaintiff,**

**-vs-**                                                                            **Case No. 6:12-cv-577-Orl-22DAB**

**GEORGE M. EVANS, BENNYBETH &**
**J JR'S EXPRESS, her boats, engines, tackle,**
**equipment, apparel, furnishings, freights**
**and appurtenances, etc.,** *in rem,*

        **Defendants.**
_____

## REPORT AND RECOMMENDATION

This cause came on for consideration with an evidentiary hearing[1] on the following motion filed herein:

> **MOTION:**     **MOTION TO DISMISS ACTION AND VACATE ARREST (Doc. 26)**
>
> **FILED:**       **June 4, 2012**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Plaintiff Benito Santiago filed this *in rem* admiralty action seeking to regain possession of the Bennybeth & J Jr's Express[2] (the "Vessel"), that he alleges his former attorney, George Evans, took possession of without Santiago's consent and allegedly transferred possession to a third party. Following arrest of the Vessel, two claimants to the Vessel, Evans and the third-party purchaser, filed a Motion to Dismiss and Vacate Arrest arguing that the Court lacks admiralty jurisdiction over

---

[1]A hearing was held on June 11, 2012.

[2]The Vessel is a 1995 Sea Ray Sundancer 62.5' recreational vessel with hull identification number SERY0136A595 and official number 1032774. Doc. 6 ¶ 3.

Santiago's claim[3]. Because the Court has now determined, following an evidentiary hearing on the matter, that it has subject matter jurisdiction over Santiago's claim to the Vessel, it is respectfully **RECOMMENDED** that Claimants' Motion to Dismiss be **DENIED**.

**I. Procedural History and Facts Related to Subject Matter Jurisdiction**

On April 16, 2012, Santiago filed an *in rem* action seeking possession of the Vessel, alleging that he has legal title to the Vessel and that George Evans, his former attorney, took possession of the Vessel without Santiago's consent and failed to return the Vessel, denying Santiago possession of the Vessel. Doc. 1. Two days later, the Court denied without prejudice Santiago's Motion to Issuance of a Warrant to arrest the Vessel based on the allegations in Santiago's original Verified Complaint because the Court was in doubt as to its subject matter jurisdiction. Doc. 5. The Court granted Santiago leave to file a motion or amended complaint with case law supporting the exercise of admiralty jurisdiction under the circumstances, and to state whether the individual Defendant George M. Evans was sued *in personam* or *in rem*. In addition to significant pleading errors in the original complaint[4], the Court identified a crucial jurisdictional error – Santiago had not pled sufficient facts for the Court to determine whether his title claims were legal or equitable in nature, and the Court lacked jurisdiction in admiralty over purely equitable disputes to title, even where a vessel is involved. Doc. 5 at 2.

On April 24, 2012, Santiago file an Amended Complaint asserting as the basis for his *in rem* admiralty claim that he had legal title to the Vessel and that George Evans, his former attorney, took possession of the Vessel without Santiago's consent and has failed to return the Vessel, thus denying Santiago possession of the Vessel. Doc. 6 ¶¶ 10-11. Santiago also alleged that he "never sold the

---
[3]The issues of verification and publication/notice raised by Claimants, as well as the deposit for the custodial expenses, are addressed by separate order entered contemporaneously.

[4]These included citation to the Ship Mortgages Act as the basis for jurisdiction though there was no mortgage in dispute.

Vessel to Evans, never received any consideration from Evans whatsoever for the Vessel, and did not otherwise relinquish title or ownership in the Vessel." Doc. 6 ¶ 9.

Based on the allegations of the Amended Complaint, the Court found that it appeared to have subject matter jurisdiction over Santiago's possession claim pursuant to Rule D of the Supplemental Rules for Admiralty or Maritime Claims which provides admiralty jurisdiction for "all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel." Rule D of the Supplemental Rules for Admiralty or Maritime Claims. *See Northern Ins. Co. of New York v. 1996 Searay Model 370DA Yacht*, 453 F.Supp.2d 905 (D.S.C. 2006) (holding federal court sitting in admiralty had jurisdiction over a petitory and possessory suit to try title under Rule D where insurer of owner brought suit to regain possession of a vessel that was stolen from its insured and registered with the Coast Guard under a false hull identification number, naming the vessel and the purchaser of the vessel from the thief). The Court then granted the renewed motion for issuance of a warrant *in rem* on April 26, 2012 and the Clerk issued the warrant to arrest the Vessel on April 27, 2012. Doc. 10.

Following execution of the warrant of arrest on the Vessel on May 10, 2012, Claimants George Evans and the putative bona fide purchaser of the Vessel from Evans, HH&DD Holdings of Florida, LLC, filed their Motion for issuance of an order to show cause why the Rule D arrest should not be vacated or in the alternative require Santiago to provide security or a bond of $220,000. Doc. 21. HH&DD Holdings alleged that George Evans was record owner who had purchased the Vessel from Santiago on September 10, 2009 for the sum of $100,000 and other good and valuable consideration. *See* Doc. 21-3; *see also* Doc. 26. Their attached exhibits show Santiago's signature on the transfer of ownership document transferring the Vessel to George Evans (Doc. 21-3), and Santiago's signature was subsequently attested to by a Florida Notary in response to a Coast Guard

request. Doc. 21-4 (affirmation from the notary, Eric Bird, who witnessed Santiago's signature on the Bill of Sale).[5]

For reasons not satisfactorily described, Evans delayed seeking documentation of the alleged transfer of ownership until September 26, 2011. Doc. 21-5. Nonetheless, Claimants also filed an Abstract of Title showing that George Evans had legal title effective September 10, 2009. Doc. 21-5. Santiago had attached to the original Complaint a Certificate of Documentation from the National Vessel Documentation Center (Doc. 1-1) dated July 9, 1999, well before the dates on the Abstract of Title, which reports the bill of sale and the transfer of ownership from Santiago to Evans on September 10, 2009. Doc. 26-4. HH&DD Holdings subsequently purchased the Vessel from Evans on March 20, 2012 for the sum of $110,000[6]. Doc. 21-2. A Certificate of Documentation from the National Vessel Documentation Center filed by Claimants also shows George Evans as the owner of the Vessel as of January 18, 2012. Doc. 26-5.

The Court, once again concerned about whether Santiago claimed *legal title* to the Vessel– which determines whether the Court had subject matter jurisdiction for the possessory and petitory action under Rule D– noticed a hearing on the status of the Vessel for May 25, 2012. At the hearing, the Court heard oral argument concerning the Vessel's ownership, and set the matter for an evidentiary hearing on June 11, 2012 to allow the parties time to conduct limited jurisdictional discovery. Doc. 23.

**II. Analysis**

Santiago filed his claim in rem claim in admiralty seeking to obtain possession of the Vessel and alleging that he possesses legal title to it. Under Rule D of the Supplemental Rules for Admiralty

---

[5]The attestation, which is undated, was created on a wholly separate paper some time after the alleged transfer. Santiago denied signing the Bill of Sale.

[6]The extent of any liability of Evans to HH & DD Holdings, LLC is outside the scope of the jurisdictional issue.

or Maritime Claims, a party can bring a claim for possession and to try title with respect to a vessel or other maritime property. "Petitory suits are suits in which it is sought to try the title to a ship independently of any possession of the vessel" [while] "possessory actions are actions to recover vessels or other property to which an owner, seaman or lienor is of right entitled." *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, 282 (2d Cir. 2000) (citing 1 BENEDICT ON ADMIRALTY § 201, at 13-1 to -2; *see also Cary Marine, Inc. v. M/V Papillon*, 872 F.2d 751, 756 (6th Cir. 1989) ("A possessory action permits a party to adjudicate the right to possession of property that has wrongfully been taken.").

Claimants contend in their Motion to Dismiss that the Court lacks subject matter jurisdiction over Santiago's admiralty claim[7] because it involves what is purely a dispute over the contract for sale and transfer of the Vessel from Santiago to George Evans and such transaction is not within the Court's admiralty jurisdiction. Santiago argues that he never sold the Vessel or transferred title to Evans, Evans took the Vessel without Santiago's consent, and he is entitled to immediate possession.

The Eleventh Circuit, in *Nehring v. Steamship M/V Point Vail*, 901 F.2d 1044, 1048 (11th Cir. 1990), discussed the analysis generally required to determine whether certain claims come within admiralty jurisdiction:

> Article III, Section 2 of the Constitution states that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction." With regard to contracts, determining whether a particular agreement falls within this jurisdictional grant focuses on "'the nature of the contract, as to whether it has reference to maritime service or maritime transactions.'" *E.S. Binnings, Inc. v. M/V Sandi Riyadh*, 815 F.2d 660, 662 (11th Cir.) *reh'g en banc denied 820 F*.2d 1231 (1987)(quoting *North Pacific S.S. Co. v. Hall Bros. Marine R. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1918)). Not every contract that somehow relates to a ship or its business is considered maritime. To come within the federal court's admiralty and maritime jurisdiction, "such contracts must pertain directly to and be necessary for commerce or navigation upon navigable waters." 7A

---

[7]Santiago did not assert jurisdiction on any other basis, such as diversity (*see* 28 U.S.C. sec. 1332) and his claims are *in rem* against the Vessel and putatively against George Evans.

MOORE'S FEDERAL PRACTICE ¶ .230[2], at 2761 (1988). *See also E.S. Binnings, Inc.*, 815 F.2d at 663; 1 BENEDICT ON ADMIRALTY § 182, at 12–5, 6 (1989) ("In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry."). Deciding whether contracts come within federal maritime jurisdiction, however, is not subject to exactitude. Precedent and usage are helpful with regard to more common types of contracts, *id.* at 12–3, while less common situations must be considered on a case-by-case basis. *Ford Motor Co. v. Wallenius Lines, Inc.,* 476 F.Supp. 1362, 1366 (E.D.Va.1979); *Cf. Crotwell v. Hockman–Lewis, Ltd.*, 734 F.2d 767 (11th Cir.1984) (noting that determination of whether particular personal injury claims are sufficiently proximate to traditional maritime activity to satisfy admiralty jurisdiction will develop on case-by-case basis).

*Id.* at 1048.

The prevailing rule is that a contract for the sale of a ship is not a maritime contract. *Richard Bertram & Co. v. Yacht Wanda*, 447 F.2d 966, 967 (5th Cir. 1971)[8] (citing *Flota Maritima Browning de Cuba v. Snobl, 363 F.2d 733* (4th Cir. 1966); GILMORE & BLACK, THE LAW OF ADMIRALTY, 25 (1957); 1 BENEDICT ON ADMIRALTY, Section 67 (6th ed. 1940)). As the Court previously explained in denying Santiago's initial motion for arrest warrant, disputes over equitable rather than legal title to a vessel are not within the Court's admiralty jurisdiction:

> Not all disputes over title to a vessel are within a federal court's admiralty jurisdiction. A party seeking possession of a vessel under Rule D "must have legal title or a legal claim to possession." *Cary Marine, Inc. v. M/V Papillon*, 701 F.Supp. 604, 606 (N.D. Ohio 1988), *aff'd*, 872 F.2d 751 (6th Cir. 1989). A petitory action (to try title) under Rule D "requires [a] plaintiff to assert a legal title to the vessel; mere assertion of an equitable interest is insufficient." *Silver v. Sloop Silver Cloud*, 259 F.Supp. 187, 191 (S.D. N.Y. 1966). According to the [original] Complaint, legal title to the Vessel [was alleged to be] currently held by Evans, not by Plaintiff.
> 
> A Rule D claim asserting only equitable interests, with no separate basis for admiralty jurisdiction, is not cognizable in admiralty. *See Gulf Coast Shell and Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010) (holding that federal court lacked admiralty jurisdiction over an equitable claim to a vessel where plaintiff offered no support as to why its claim was not merely equitable in nature and admiralty jurisdiction applied only for a legal claim); *Privilege Yachting, Inc. v. Teed*, 849 F.Supp. 298, 301 (D.

---

[8]All decisions of the United States Fifth Circuit Court of Appeals before October 1, 1980 which have not been overruled by the United States Eleventh Circuit Court of Appeals are binding on federal courts situated in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

> Del.1994); *United States v. Cornell Steamboat Co.*, 202 U.S. 184, 194, 26 S.Ct. 648, 50 L.Ed. 987 (1906).
>
> In *The Captain Johnson,* 64 F.Supp. 559, 560 (D. N.J. 1946), the court held there was no admiralty jurisdiction where the plaintiffs alleged they had "inadvertently and by fraud, placed the legal title to the boat in question" in a third party. The court distinguished the cases in which the legal title to the boat was alleged to be in the plaintiff without limitation, because in each of those cases some force came into play from a source extrinsic to the plaintiff to divest him of title and possession, while in *The Captain Johnson*, the plaintiffs admitted that "they, themselves, inadvertently and by fraud," placed the legal title to the boat in the defrauding party. Plaintiff has not provided an explanation of whether the title was obtained by fraud or some other means that would require an equitable remedy rather than a suit to try title. Since an admiralty court does not have the powers of an equity court, it will not assume jurisdiction of a proceeding in which the primary purpose is to enforce an equitable interest against a legal title. *Id.*

Doc. 5 at 3-4. As set forth below, based on the hearing testimony at this juncture, the Court finds that Santiago has asserted he has legal title to the Vessel and the Court has jurisdiction over his admiralty claims.

**III. Hearing Testimony**

The evidence at the hearing consisted of the testimony of Mr. Santiago, Edwin Beach (a yacht broker who has attempted to sell the vessel since 2004), and Mr. Evans; the parties also presented various exhibits. Mr. Santiago and Mr. Evans both testified that Mr. Evans served as an attorney for Mr. Santiago for many years on such matters as litigation over child support payments, recovery of a luxury automobile that had been seized in a drug raid, parking tickets, and other matters. The parties agree that Mr. Evans loaned various substantial sums, in excess of $100,000, to Mr. Santiago. Some of the money was to provide general financial support, and other payments were made to third parties to meet Mr. Santiago's obligations in litigated matters (*e.g.*, payment of court ordered attorney's fees and fines). None of the loans or payments was documented, and this entire series of payments was in violation of Rule 4-1.8, Rules Regulating the Florida Bar. Evans also claims that Santiago owes him

for unbilled legal fees in an unspecified amount. Apparently, Evans has never provided any kind of accounting about the financial relationship between himself and Mr. Santiago.

According to Mr. Evans, in 2009 he became concerned about Mr. Santiago's other creditors and his ability to repay these undocumented advances. He claims that Mr. Santiago agreed to transfer title of the Vessel in partial satisfaction ($100,000[9]) of the antecedent debt. He testified that Mr. Santiago signed the Bill of Sale with the understanding that Mr. Santiago would maintain possession of the Vessel and responsibility for its maintenance and dockage until some unidentified future date. This transaction, if it occurred, was also in complete derogation of Mr. Evans' responsibilities under Rule 4-1.8. As noted above, Mr. Evans did not seek to document the transfer until December 13, 2011 (*see* Doc. 26-3), and Mr. Santiago flatly denies signing the Bill of Sale.[10]

## IV. Preliminary Findings[11]

The Court is unable to determine on this record as it currently stands whether Santiago signed the Bill of Sale. The circumstances surrounding the signing of the Bill of Sale are highly suspect. There was no notarization of Santiago's signature at the time the Bill of Sale was completed, and Evans' paralegal who provided the attestation did not do so until September 26, 2011 when the notary attestation was demanded by the Coast Guard for registration. There is no written contract for sale of the Vessel. There is no written contract for provision of legal services by Evans on behalf of Santiago, nor was there written billing statements provided to Santiago by Evans for the legal fees allegedly owed. There was no independent valuation of the Vessel before the $100,000 amount was

---

[9] It is unclear how this figure was arrived at. There is no evidence that anything was done to determine whether it was a fair estimation of the value of the Vessel at the time. Whatever occurred, Mr. Santiago was not represented by counsel in any of his dealings with Mr. Evans.

[10] The original Bill of Sale is purportedly in the custody of the Coast Guard and has not been subjected to expert analysis.

[11] The findings relate to the issue of subject matter jurisdiction **only** and will not be binding, nor should they be relied upon, at trial.

-8-

entered on the Bill of Sale. Evans waited two years to register the Bill of Sale. Evans allowed Santiago to keep possession of the Vessel during that time and for several months after registering the Bill of Sale. Santiago paid the dockage fees, maintenance fees, and arranged for sale of the Vessel (since 2004) with broker Ed Beach. Santiago's denial of the sale was also not compelling–his testimony was vague and only selectively direct. In the absence of original documents and other circumstantial evidence, the Court is unwilling to reach even the tentative conclusion that the sale actually took place.

Even under Evans' assertions that he took ownership of the Vessel, however, a purported transfer would be void *ab initio* as a prohibited transaction and contrary to the public policy of Florida as reflected in Rule 4-1.8.

> Rule 4-1.8 Conflict of Interest; Prohibited and Other Transactions:
>
> (a) Business Transactions With or Acquiring Interest Adverse to Client. A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, *security, or other pecuniary interest adverse to a client*, except a lien granted by law to secure a lawyer's fee or expenses, unless:
> > (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are *fully disclosed and transmitted in writing to the client* in a manner that can be reasonably understood by the client;
> > (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of *independent legal counsel* on the transaction; and
> > (3) the client gives informed consent, in a *writing signed by the client*, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.
> * * *
> (e) Financial Assistance to Client. A lawyer shall *not provide financial assistance to a client in connection with pending or contemplated litigation* [with exceptions not relevant here].

R. Regulating Fla. Bar 4-1.8(a) & (e) (emphasis added).

The plain language of Rule 4-1.8 requires that the terms of the transaction be disclosed to the client in writing and that the client consent in writing; "the obvious purpose of the writing requirement

-9-

in Rule 4-1.8 is to avoid a conflict of interest wherein a client is inadequately apprised of the nature and terms of a business transaction with his or her lawyer." *The Florida Bar v. Nesmith*, 642 So.2d 1357 (Fla. 1994). The language of the Rule indicates that a lawyer's involvement in a business transaction with a client constitutes a violation of the Rule unless the lawyer makes the required disclosures[12]. *The Florida Bar v. Doherty*, __ So.3d __, 2012 WL 1033478 (Fla. Mar. 29, 2012). This case starkly illustrates the purpose behind and the perils of disregarding Rule 4-1.8.

Evans argues that Santiago's challenge to the alleged sale is merely a defense to the contract, and violation of Rule 4-1.8 would make the contract voidable – an issue that should be decided in a contract action in state court, not in an admiralty court. However, longstanding precedent in Florida holds that a contract which contravenes an established interest of society will be found to be void as against public policy. *See, e.g., American Casualty Co. v. Coastal Caisson Drill Co.*, 542 So.2d 957, 958 (Fla. 1989); *City of Miami v. Benson*, 63 So.2d 916 (Fla.1953); *cf. Chandris, S.A. v. Yanakakis*, 668 So.2d 180, 185 (Fla. 1995) (holding fee agreement to be void where it contravened public policy encapsulated in contingent fee bar rules). As the Florida Supreme Court explained in *Chandris*, to find an offending contract, in which the attorney has not followed the rules regulating the Bar for financial arrangements between attorneys and clients, to be merely voidable rather than void, "would be recognizing the validity of a contract entered into by an attorney not subject to our regulations. This would afford viability to an unregulated contract of the very kind that we have determined to be in the public interest to regulate." *Id.* (citing *In re Florida Bar-Amendment to the Code of Professional Responsibility*, 349 So.2d 630, 632 (Fla. 1977)). Evans alleges a vague and non-written agreement in which he paid litigation expenses for his client, Santiago, of more than $146,000 for

---

[12]The effect of Evans' misconduct in relation to Santiago, and Evans' right to practice law, is a moot issue since Evans surrendered his Bar license in December 2011.

settlements and other related expenses[13]. He subsequently allegedly entered into an oral business arrangement in which he sought repayment through a security interest in the Vessel. Any such agreements would be void *ab initio* as against public policy on this record as it stands.

Given that the Court finds no valid contract for sale was reached–on the record as it stands only for purposes of deciding if jurisdiction exists–the Court appears to have subject matter jurisdiction over Plaintiff's claim pursuant to Rule D of the Supplemental Rules for Admiralty or Maritime Claims, which provides admiralty jurisdiction for "all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel." Rule D of the Supp. R. for Adm. Mar. Claims. As the Court explained above, the party urging arrest in the Rule D action must have legal title or a legal claim to possession in order for the Rule D arrest to stand. *See, e.g., Gulf Coast Shell and Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010) (holding that a Rule D claim asserting only equitable interests, with no separate basis for admiralty jurisdiction, is not cognizable in admiralty). Santiago has sufficiently alleged that he has legal title, Claimants' evidence to the contrary is inconclusive or void, and it is undisputed that Santiago has been deprived of possession of the Vessel.

In the *Yacht Wanda*, the case relied upon by the Claimants in arguing that the Court lacks jurisdiction, the parties had negotiated a contract for construction and sale of a ship which was never delivered, and the plaintiff subsequently sought to try the title to the yacht to determine whether plaintiff was the legal owner. *Id.* The former Fifth Circuit held:

> The boundaries of admiralty jurisdiction over contracts have always been difficult to draw. A maritime contract is one which concerns transportation by sea, relates to navigable waters and concerns maritime employment. *General Engine & Machine Works v. Slay*, 222 F.Supp. 745 (S.D.Ala.1963). The mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court. But, whether this

---

[13]The amount and enforceability of any claimed indebtedness of Santiago to Evans is also outside the scope of this admiralty action.

-11-

suit is viewed as one to enforce a security interest or mortgage on a vessel, a suit to try or quiet title, a suit for breach of a contract of sale, or a suit upon a contract to construct a vessel, it is not within the admiralty jurisdiction of this Court.

*Id.* at 967-68; *see also Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848, 850 (11th Cir. 1988) ("[T]he law in the Eleventh Circuit is firmly established that neither contracts for construction nor for sale of a vessel are maritime in nature.").

However, a subsequent Former Fifth Circuit decision (equally binding on this Court), distinguished *The Yacht Wanda* as "involv[ing] a pure and simple dispute between a vessel manufacturer and buyer concerning a contract for construction and delivery of a vessel [which] did *not* involve an allegation by the plaintiff of ownership, right to immediate possession, an unlawful taking and detention by defendant and damages caused to the vessel by such tortious conduct by defendants, as in this case." *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht*, 625 F.2d 44 (5th Cir. 1980) (emphasis added). As in *Jones*, this case involves much more a "simple dispute for construction and delivery" of the Vessel, rather Santiago moves for immediate possession and argues that the Vessel was unlawfully taken by his former attorney and he seeks immediate possession. *See also Northern Ins. Co. of New York v. 1996 Searay Model 370DA Yacht*, 453 F.Supp.2d 905 (D.S.C. 2006) (holding federal court sitting in admiralty had jurisdiction over a petitory and possessory suit to try title under Rule D where insurer of owner brought suit to regain possession of a vessel that was stolen from its insured and registered with the Coast Guard under a false hull identification number, naming the vessel and the bona fide purchaser of the vessel).

It is respectfully **RECOMMENDED** that the Claimants' Motion to Dismiss Action and Vacate Arrest (Doc. 26) be **DENIED** and the District Court find it has admiralty jurisdiction over Santiago's claim.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on June 21, 2012.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record